Hat, J.
The first question to be considered is, whether the action of the city authorities, in permitting a double-track street railroad to be laid, is conclusive of the fact, that a majority in interest of the owners of property on the street consented to the construction of a double track.
The statute expressly prohibits the city authorities from permitting a street railroad to be constructed without such consent; it was, therefore, a condition precedent to the power of the city to grant the requisite permission to lay the track in controversy. The evident object of the act is, to protect the owners of property, on the streets of cities therein referred to, from the exercise of an arbitrary power, on the part of the city authorities, in permitting the streets to be used for street railroads. A construction inconsistent with this obvious design of the statute would defeat the very purpose of its enactment.
If the action of the city authorities is regarded as a conclusive and unquestionable determination of the facts requisite to the legality of their action, then the disabilities imposed by the statute will be removed by construction, and the power sought to be restrained is practically unlimited.
The power of the city authorities to act in the premises does not depend upon something to be done or determined by them, but upon a condition required by the statute. Nor is there anything in the act that implies that they are authorized to determine conclusively by their own action that the prerequisite consent has been obtained, upon which they have the power to act. They cannot thus defeat the lights secured by law to the owners of property on a street proposed to be occupied for a street railroad.
This case is plainly distinguishable from a class of cases where the rights of third parties intervene. Here the proceeding is direct, and not collateral. It was begun before the authority granted to construct the double track was exercised, and for the very purpose of preventing its execution. The rights and interests of third ■ parties are not involved. The permission to construct a new track was sought by Roberts (the party enjoined by the court below), and for his own *87 benefit. It is clearly inferrable from the record, that he took upon himself to procure the requisite consent of the property owners on the street, and was, therefore, fully advised of the facts, and knew that the authority obtained by him was in violation of the statute. At all events, he-stood in such a relation to the transaction, that he could gain nothing by the action of the city authorities in his favor, without first having secured the performance of the condition precedent to the power of the authorities to act in his behalf. The provisions of the statute under which they acted were public. Both parties had equal notice of the facts upon which they were acting; both of them, therefore, are equally affected by the disabilities imposed by the law, by which both parties were equally bound.
We think, therefore, that the action of the city authorities was not conclusive of the fact of the requisite consent of the property owners to the construction of the street railroad, or double track, in question.
The next inquiry relates to the validity of the assent of the board of county commissioners to the construction of the proposed street railroad. That consent was necessary to constitute a majority in interest, and it related only to the courthouse property belonging to the county of Hamilton.' Eor aught that appears, all this property was of that public character which the statute exempts from taxation, and had no “ assessed value.” If so, it could not properly be counted to make a majority in interest; for the statute declares that, “for the purpose of determining what is a majority in interest, reference shall be had to the assessed value of the whole property located upon such street or avenue.”
But however this may be, the additional track was, in fact, in the nature of an original enterprise, requiring the consent of the property owners to authorize its construction, and it was so treated by the city authorities and all interested in the project. The question, therefore, to be determined by the authorities was, whether at that time (May 19,1865), a majority in interest were then assenting to a double-trade, not, whether a year previous they had assented to a single-trade railroad. *88 They were separate and independent transactions, and, in the meantime, others may have become property owners on the street. The original assent, therefore, merged in the completed action of the city authorities upon it, in relation to the single-track road in 1864. The subsequent action in 1865 contemplated a renewal, or at least a continuing assent. But the one was refused, and the other negatived. We, therefore, see no error in the holding of the court below on this point of the case.
The remaining question relates to the right of the plaintiff below to bring his suit, and to the relief sought thereby. He sued on behalf of himself and others, claiming to be a majority of the owners of property interested, whose assent was essential to the legality of the proceedings complained of. The action was not based upon the statutory right of a citizen to restrain the city authorities from an abuse of their powers; nor exclusively on the ■ idea that the proposed construction was a public nuisance, that worked some special .injury to the plaintiffs. But the legislature, in forbidding the authorities having the control of the streets to permit them to be used for a street railroad, without the assent of the persons owning property thereon, recognizes the interest of such owners in such streets, and thus, at least, recognizes their right to interpose, when it is attempted to proceed without their assent. For, without such right of interposition, the statutory provision for their protection would be nugatory. We cannot regard the act as a vain thing, and are constrained to construe it as having vitality, and, therefore, clearly implying the right in those for whose benefit it was enacted to enforce its provisions bjr invoking the only completely effective remedy applicable to the case ; for the proceeding by injunction is not only the appropriate, but perhaps the only remedy.
We are of opinion, then, that there was no error in the findings and holdings of the court below. The judgment and decree of that court must, therefore, be affirmed.
Bbinkeri-ioff, O.J, and Scott, Welch, and White, JJ., concurred.